IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BANK OF AMERICA, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. |
| v. | ) |
| | ) |
| MEGA WORLD BUILDER CORP., a Florida Corporation, and MAHIR NASIF, an individual, | ) |
| | ) |
| Defendants. | ) |

**VERIFIED ORIGINAL COMPLAINT, APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND TEMPORARY
INJUNCTION, AND *EX PARTE* APPLICATION FOR WRIT OF SEQUESTRATION**

**NOW COMES** Plaintiffs Bank of America, N.A., by and through their attorneys, Chapman and Cutler LLP, and for their Verified Original Complaint, Application for Temporary Restraining Order and Temporary Injunction, and *Ex Parte* Application for Writ of Sequestration against Defendants Mega World Builder Corp., a Florida Corporation, and Mahir Nasif (collectively, *"Defendants"*) respectfully allege as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

2. Venue is proper under 28 U.S.C. § 1391(a) pursuant to the forum selection clause contained in the RLOC Loan Agreement (defined below) executed by Defendant Mega World Builder Corp and the February 20 Guaranty (defined below) executed by Defendant Mahir Nasif; Houston, Texas is the principal place of business of Defendant/Borrower Mega World Builder

Corp.; a substantial part of the event or omissions giving rise to the claims occurred in the Southern District of Texas in that the Loans (defined below) originated in the Southern District, Houston Division; and the RLOC Loan Agreement and the MLSA Loan Agreement are performable in the Southern District of Texas, Houston Division.

## PARTIES

3.  Plaintiff Bank of America, N.A. (the "*Bank*") is a national banking association chartered under the laws of the United States of America with its main office and principal place of business located in Charlotte, North Carolina as designated in its Articles of Association, and as such, it is a citizen of the State of North Carolina for diversity jurisdiction purposes by virtue of 28 U.S.C. § 1348.

4.  Upon information and belief, Defendant Mega World Builder Corp. (*"Borrower"*) is and, at all relevant times, was a Florida corporation with a principal place of business located at 12604 Haynes Rd, Suite A, Houston, TX 77066-2353. Mega World Builder Corp. may be served through its Registered Agent Larry D. Tew at 363 North Sam Houston Parkway East, 1100, Houston, TX 77060 or through any Vice President at 12604 Haynes Rd, Suite A, Houston, TX 77066-2353.

5.  Upon information and belief, Defendant Mahir Nasif (*"Nasif"*) is and, at all relevant times, was a natural person who is a citizen of the State of California and resides at 22722 La Vina Dr., Mission Viejo, CA 92691-1971.

## NATURE OF THE ACTION

6.  This is an action by the Bank as a commercial lender to: (i) enforce its rights in connection with the obligations and indebtedness owed to Bank by Borrower under a loan facility, equipment lease agreement, and commercial credit card agreement, and (ii) enforce its

rights in connection with certain guaranty agreements between the Bank and Nasif, pursuant to which Nasif agreed to absolutely and unconditionally guarantee any and all indebtedness owed by Borrower to the Bank.

7. As set forth below, recently on May 9, 2024, Borrower provided to the Bank a purported lien release letter allegedly from Regions Bank in an attempt to convince the Bank that Regions Bank does not hold a first lien position on the same collateral pledged by the Borrower to the Bank.

8. However, the Bank has since learned that the purported lien release letter is fake and that the signature of a Regions Bank representative therein was forged, constituting among other things a default under the Loan Agreements at issue.

9. Defendants' untenable and fraudulent conduct is substantial indicia that the subject Collateral is at immediate risk, in addition to Borrower's longstanding failure to provide access to the Collateral to Plaintiffs for inspection and Borrower's continuing failure to turnover the Collateral, as demanded by the Bank, all of which warrants the emergent relief sought herein.

## FACTUAL ALLEGATIONS

**The Obligations**

10. On or about February 20, 2024, the Bank entered into a Loan Agreement with Borrower (as amended, supplemented, restated, extended and/or renewed, the *"RLOC Loan Agreement"*), pursuant to which the Bank agreed to make available to Borrower a $4,500,000.00 revolving line of credit facility (the *"RLOC Loan"*).  A true and accurate copy of the Loan Agreement is attached hereto as Exhibit 1.

11. The RLOC Loan was secured by a certain Security Agreement dated February 20, 2024, executed by Borrower and the Bank (the *"RLOC Security Agreement"*) pursuant to which

Borrower granted to the Bank a first priority blanket security interest upon all assets of Borrower, including the following property (collectively, the *"RLOC Collateral"*):

    (a) All accounts, and all chattel paper, instruments, deposit accounts, letter of credit rights, and general intangibles related thereto; and all returned or repossessed goods, which, on sale or lease, resulted in an account;

    (b) All inventory;

    (c) All equipment and fixtures now owned or hereafter acquired by [Borrower];

    (d) All negotiable and nonnegotiable documents of title covering any Collateral;

    (e) All accessions, attachments and other additions to the Collateral, and all tools, parts and equipment used in connection with the Collateral;

    (f) All substitutes or replacements for any Collateral, all cash or non-cash proceeds (including insurance proceeds), products, rents and profits of the Collateral, and all income, benefits and property receivable on account of the Collateral, and all supporting obligations covering any Collateral;

    (g) All books, data and records pertaining to any Collateral, whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer-readable memory and any computer software necessary to process such memory ("Books and Records").

A true and accurate copy of the RLOC Security Agreement is attached hereto as <u>Exhibit 2</u>.

12. The Bank perfected its first priority blanket security interest in the RLOC Collateral by filing that certain Uniform Commercial Code Financing Statement designating Borrower, as debtor, and the Bank, as secured party, with the Florida Department of State on February 27, 2024, as Filing Number 202400506750. A true and accurate copy of the aforesaid Uniform Commercial Code Financing Statement is attached hereto as <u>Exhibit 3</u>.

13. As further security for the prompt and complete payment and performance of all of Borrower's then or thereafter-existing debts, obligations, and liabilities to the Bank, its subsidiaries and affiliates, including but not limited to the RLOC Loan, on or about February 20,

2024, defendant Nasif executed that certain Continuing and Unconditional Guaranty in favor of the Bank (the *"February 20 Guaranty"*, and together with the RLOC Loan Agreement, and RLOC Security Agreement, referred to herein as the *"RLOC Loan Documents"*), securing the payment of any and all "Indebtedness" (as defined in the February 20 Guaranty) of Borrower to the Bank when due.  A true and accurate copy of the February 20 Guaranty is attached hereto as <u>Exhibit 4</u>.

14.   On or about February 8, 2024, the Borrower and the Bank executed (i) a certain Master Loan and Security Agreement Number: 53839-70000 (as amended, supplemented, restated, extended and/or renewed, the *"MLSA Loan Agreement"*), and (ii) a certain Equipment Security Note Number 001 (as amended, supplemented, restated, extended and/or renewed, the *"Equipment Note"*), pursuant to which the Bank made an equipment loan to the Borrower in the original principal amount of $3,000,000.00 (the *"MLSA Loan"*) to finance Borrower's purchase of (a) a 2020 Trencor Trencher T16-60, Serial Number T16-187, and (b) a 2022 Vermeer Drill D330X500, Serial Number 1VR450075E1099684, as described in Exhibit A to the Equipment Note (collectively, the *"Equipment"*, and together with the RLOC Collateral, the *"Collateral"*), and Borrower agreed to repay to the Bank the amounts set forth in the Equipment Note executed in connection with the MLSA Loan Agreement.  A true and accurate copy of the MLSA Loan Agreement is attached hereto as <u>Exhibit 5</u> and a true and accurate copy of the Equipment Note is attached hereto as <u>Exhibit 6</u>.

15.   The Bank perfected its first priority blanket security interest in the Equipment by filing that certain Uniform Commercial Code Financing Statement designating Borrower, as debtor, and the Bank, as secured party with the Florida Department of State on February 15, 2024, as Filing Number 20240040589X.  A true and accurate copy of the aforesaid Uniform Commercial Code Financing Statement is attached hereto as <u>Exhibit 7</u>.

16. As further security for the prompt and complete payment and performance of all of Borrower's then or thereafter-existing debts, obligations, and liabilities to the Bank, including but not limited to the MLSA Loan, on or about February 9, 2024, defendant Nasif also executed that certain Continuing and Unconditional Guaranty in favor of the Bank (the *"February 9 Guaranty"* and together with the February 20 Guaranty, the *"Guaranties"*), securing the payment of any and all indebtedness of Borrower to the Bank and its affiliate, Banc of America Leasing & Capital, LLC, when due. A true and accurate copy of the February 9 Guaranty is attached hereto as Exhibit 8. The February 9 Guaranty, together with the MLSA Loan Agreement and Equipment Note shall be referred to herein as the *"MLSA Loan Documents"*)

17. As of February 16, 2024, the Borrower and the Bank executed that certain Commercial Card Account Agreement (as amended, supplemented, restated, extended and/or renewed, the *"Card Agreement"*, and together with any related or ancillary documents pertaining thereto, the *"Card Account Documents"*, and collectively with the RLOC Loan Documents and the MLSA Loan Documents, the *"Loan Documents"*) providing for a commercial credit card account (the "*Card Account*" and together with the RLOC Loan and the MLSA Loan, the "*Loans*") between the Bank and the Borrower. A true and accurate copy of the Card Agreement is attached hereto as Exhibit 9.

**Event of Default 1: The Fraud Defaults**

18. On or about May 9, 2024, Borrower provided to the Bank a purported lien release letter, purported to be from Regions Bank and allegedly signed by Regions Bank Vice President Thomas J. Bacarella (the *"Purported Lien Release Letter"*), a true and accurate copy of which is attached hereto as Exhibit 10. In doing so, the Borrower represented to the Bank that the Purported Lien Release Letter was true, correct and legitimate, in an attempt to convince the

Bank that, among other things, Regions Bank does not hold a lien upon the same collateral pledged by Borrower to the Bank.

19. However, as set forth in a July 29, 2024 letter from Regions Bank Vice President Thomas J. Bacarella to Bank of America, N.A. Senior Vice President Ray Ratliff, attached hereto as Exhibit 11, Regions Bank did not have a record of the Purported Lien Release Letter and, to the contrary, had issued a letter dated May 22, 2024 stating that Regions Bank was not releasing its liens on its collateral.

20. The Purported Lien Release Letter provided by Borrower to Plaintiff is not true, correct or legitimate, and Mr. Bacarella's signature was forged, constituting a default under each Loan Agreement. *See* RLOC Loan Agreement, ¶ 9.2(iii) (Other Bank Agreements.), ¶ 9.4 (False Information.); RLOC Security Agreement, ¶ 5(a)(ii) (DEFAULTS); MLSA Loan Agreement, ¶¶ 10(4) & 10(8) (Default.); Card Agreement ¶¶ 18B.(b) & (e) (collectively, the "*Fraud Defaults*").

**Event of Default 2: The Security Defaults**

21. As a material term to induce the Bank to enter into the Loan Documents, Borrower agreed to grant to the Bank a first priority lien on all of its business assets as set forth in ¶ 3 of the RLOC Loan Agreement (COLLATERAL) and ¶ 1 of the RLOC Security Agreement (THE SECURITY).

22. However, a UCC lien search dated July 5, 2024 revealed that Regions Bank in fact holds first priority liens on certain "export inventory" and "foreign accounts receivable" of Borrower, constituting a default under each of RLOC Loan Agreement, ¶ 9.2(iv) (Other Bank Agreements.), ¶ 9.6 (Lien Priority.) and ¶ 9.12 (Covenants.), the RLOC Security Agreement, ¶¶ 5(a)(i) & (ii) (DEFAULTS), the MLSA Loan Agreement, ¶ 10(8) (Default.), and the Card Account Agreement, ¶ 18B.(b) (collectively, the "*Security Defaults*").

**Event of Default 3: The Inspection Defaults**

23. Since no later than June 20, 2024, the Bank, through Len Brester and Michael Holck of Holck Appraisal Company, LLC, has repeatedly attempted to coordinate an inspection of the Collateral with Borrower.

24. As shown in the email chain containing correspondence between the Bank's agents and Defendant Mahir Nasif attached hereto as Group Exhibit 12, on or about June 20, 2024 Mr. Nasif advised Mr. Brester, among other things, that (a) certain of the Collateral, a large "Trencher" located in Houston, Texas is "in route" to another location – although no specific location or confirmation of the arrival of the Collateral at its purported destination was ever provided, and (b) that an unknown individual named "Alex" would be contacting Mr. Brester to coordinate an inspection.

25. However, after receiving text messages and a voicemail from "Alex", "Alex" never responded to repeated attempts by Mr. Brester to coordinate an inspection of the Collateral.

26. Despite repeated requests, Borrower has failed and refused to allow the Bank to inspect certain collateral, specifically the heavy Equipment that secures both the MLSA Loan and the RLOC Loan, as required under the RLOC Security Agreement, ¶ 3.(b)(viii) (PLEDGOR'S COVENANTS.) and MLSA Loan Agreement, ¶ 4 (Use; Maintenance; Location; Inspection.) constituting a default under the RLOC Loan Agreement, ¶¶ 9.2(i) & 9.2(iv) (Other Bank Agreements.), the RLOC Security Agreement, ¶ 5(a)(i) (DEFAULTS), the MLSA Loan Agreement, ¶ 10(8) (Default.), and the Card Agreement, ¶ 18B.(b) (collectively, the "*Inspection Defaults*").

**Event of Default 4: The Payment Defaults**

27. On July 8, 2024, Borrower remitted a payment to the Bank in connection with the Card Account (the "*NSF Payment*"), which NSF Payment was returned to Borrower for non-sufficient funds in violation of Card Agreement, ¶ 9 (PAYMENTS), constituting a default under

the Card Account Agreement, ¶ 18B.(b) (SUSPENSION; TERMINATION; ACCELERATION), RLOC Loan Agreement, ¶ 9.2(iv) (Other Bank Agreements.), RLOC Security Agreement, ¶ 5(a)(ii) (DEFAULTS), MLSA Loan Agreement, ¶ 10(8) (Default.) (the "*Payment Defaults*", and together with the Fraud Defaults, Security Defaults, Inspection Defaults, the "*Events of Default*").

**Notice of Default, Demand and Acceleration**

28. On July 29, 2024, the Bank sent a notice to Borrower and Guarantor (the *"Demand Letter"*) in which the Bank advised Borrower and Guarantor that, as a result of the occurrence of the Events of Default, the Bank had elected to, and did, accelerate and declare immediately due and payable, the entire outstanding balance of all outstanding sums due in connection with the Loan Documents by no later than August 5, 2024, including all principal, accrued interest, default interest, legal fees, costs and expenses (the *"Obligations"*). A true and accurate copy of the Demand Letter is attached hereto as Exhibit 13.

29. In the Demand Letter, the Bank also demanded that if payment of the Obligations was not made on or before August 5, 2024, by no later than 12:00 noon on August 6, 2024, Borrower and Guarantor were to comply with the terms of the RLOC Loan Agreement and RLOC Security Agreement by, among other things, assembling all Collateral, including specifically the Equipment, and make the Collateral available to the Bank.

30. In the Demand Letter, the Bank also demanded that Borrower and Guarantor: (i) immediately segregate all collections and proceeds of the Collateral and deliver same to the Bank; (ii) immediately direct all account debtors of Borrower to make direct payment to the Bank of any such revenues; and (iii) provide the Bank with the names and addresses of, and the amounts due from, all such account debtors.

31. Following Borrower's receipt of the Demand Letter, the Bank, through its counsel, made repeated requests to counsel for Defendants for the location of, access to, and turnover of the Collateral.

32. On or about May 31, 2024, Borrower provided the Bank with an account statement (the *"May 31, 2024 Bank Statement"*) purportedly showing that Borrower held a balance of ***$30,003,878.09*** in a checking account at Wells Fargo Bank (the *"Wells Fargo Account"*). A true and accurate copy of the May 31, 2024 Bank Statement as received by the Bank is attached hereto as Exhibit 14.

33. However, only two months later, on July 31, 2024, Borrower, through its counsel, provided the Bank, through Bank counsel, with the first page of a Wells Fargo account statement (the *"July 31, 2024 Bank Statement"*) in order to demonstrate that the $30,003,878.09 funds previously claimed by Borrower to be held at Wells Fargo had been diminished to ***$28,283.12***. A true and accurate copy of the first page of the July 31, 2024 Wells Fargo bank statement, as received by Bank counsel, is attached hereto as Exhibit 15.

34. To date, no Defendant has made payment of the Obligations to the Bank, nor has any Defendant (or their counsel) provided the Bank with the location of the Collateral nor made the Collateral available for turnover to the Bank, as requested in the Demand Letter.

### COUNT I
### (BREACH OF THE RLOC LOAN AGREEMENT)

35. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

36. As set forth above, Borrower has defaulted under the RLOC Loan Agreement.

37. As a result of Borrower's defaults under the RLOC Loan Agreement, Borrower is liable to the Bank for the obligations due under the RLOC Loan Agreement pursuant to the RLOC Loan Agreement, but has failed to make payment to the Bank therefor.

Case 4:24-cv-03021   Document 1   Filed on 08/13/24 in TXSD   Page 11 of 20

38. The Bank reasonably relied upon the RLOC Loan Agreement when entering into the RLOC Loan Agreement.

39. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the RLOC Loan Documents.

40. As a result of the acceleration of the RLOC Loan there is due and owing to the Bank as of July 29, 2024 pursuant to the RLOC Loan Agreement the total principal sum of $4,220,000.00, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges.

41. Accordingly, the Bank is entitled to a money judgment against defendant Mega World Builder Corp., as of July 29, 2024, in the principal amount of $4,220,000.00, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank.

## COUNT II
### (BREACH OF THE EQUIPMENT NOTE)

42. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

43. As set forth above, Borrower has defaulted under the MLSA and the Equipment Note.

44. As a result of Borrower's defaults under the MLSA and the Equipment Note, Borrower is liable to the Bank for the obligations due under Equipment Note, but has failed to make payment to the Bank therefor.

45. The Bank reasonably relied upon the MLSA and the Equipment Note when entering into the MLSA Loan Documents with the Borrower.

46. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the MLSA and the Equipment Note.

47. As a result of the acceleration of the Equipment Note, as of July 29, 2024, the total principal sum of $2,830,293.72, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges.

48. Accordingly, the Bank is entitled to a money judgment against defendant Mega World Builder Corp., as of July 29, 2024, in the principal amount of $2,830,293.72, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank.

### COUNT III
### (BREACH OF CARD AGREEMENT)

49. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

50. As set forth above, Borrower has defaulted under the Card Agreement.

51. As a result of Borrower's defaults under the Card Agreement, Borrower is liable to the Bank for the obligations due under the Card Agreement, but has failed to make payment to the Bank therefor.

52. The Bank reasonably relied upon the Card Agreement when entering into the Card Agreement with Borrower.

53. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the Card Agreement.

54. As a result of the acceleration of the Card Agreement, as of July 29, 2024, the total principal sum of $685,565.01, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges.

55. Accordingly, the Bank is entitled to a money judgment against defendant Mega World Builder Corp., as of July 29, 2024, in the principal amount of $685,565.01, plus accrued

and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank.

## COUNT IV
### (FORECLOSURE OF SECURITY INTEREST UNDER ARTICLE 9 OF THE UCC)

56. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

57. To secure its interest in the Collateral, and in order to notify others of its interest in and to the Collateral, the Bank filed UCC-1 Financing Statements with the Secretary of State of the State of Florida as alleged above.

58. As a result of the Events of Default under the terms of the Loan Documents, the Bank is entitled to, *inter alia*: (a) stop Borrower from continuing to use the Collateral; (b) take possession of the Collateral; (c) require Borrower to assemble the Collateral and make same available to the Bank at a place designated by the Bank; and/or, (d) dispose of the Collateral by selling or leasing same, and apply the proceeds thereof to the obligations of Borrower.

59. Accordingly, the Bank is entitled to a judgment against defendant Mega World Builder Corp.: (i) enjoining Borrower from any further use of the Collateral; (ii) foreclosing upon the Bank's security interest in the Collateral; (iii) awarding to the Bank immediate possession of the Collateral; and (iv) permitting the Bank to dispose of same and apply the proceeds thereof to the obligations and liabilities of Borrower in accordance with Article Nine of the Florida Uniform Commercial Code and the Loan Documents.

## COUNT V
### (CONVERSION)

60. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

61. As set forth above, Borrower has defaulted under the Loan Documents, has failed to make payment to the Bank of the sums due to it, and has refused, and continues to refuse, to deliver possession of the Collateral to the Bank.

62. Upon information and belief, Borrower continues to use the Collateral in its business despite the Events of Default, despite its obligation to return the Collateral, and despite its failure to make payment to the Bank therefor.

63. The Collateral has been intentionally and wrongfully converted and detained by Borrower.

64. As a result of the failure of Borrower to surrender the Collateral and Borrower's continued illegal usage and wrongful conversion of the Collateral, the Bank has suffered damages in an amount to be determined at trial.

**COUNT VI**
**(UNJUST ENRICHMENT)**

65. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

66. Upon information and belief, Borrower continues to use the Collateral in its business despite the Events of Default and its lack of any right to possess or use same.

67. Upon information and belief, Borrower realized revenues from its illegal possession and use of the Collateral, and has been unjustly enriched in the amount of the value of the Collateral and any income Borrower realized or received due to its illegal possession of same.

68. Accordingly, the Bank is entitled to a money judgment against defendant Mega World Builder Corp. in an amount to be determined at trial.

## COUNT VII
## (BREACH OF GUARANTY)

69. The Bank refers to and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

70. As set forth above, Borrower has defaulted under the Loan Documents.

71. As a result of Borrower's defaults under the Loan Documents, defendant Mahir Nasif is liable to the Bank for any and all indebtedness owed by Borrower to the Bank pursuant to the Guaranties and the other applicable Loan Documents but has failed to make payment to the Bank therefor.

72. The Bank reasonably relied upon the Guaranties in entering into the Loan Documents.

73. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the Loan Documents, and specifically, the Guaranties.

74. As a result of the defaults under the Loan Documents, Mahir Nasif is liable to the Bank for the principal balance of $7,735,858.73, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank.

75. Accordingly, the Bank is entitled to a money judgment against defendant Mahir Nasif in the principal amount of at least $7,735,858.73, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank.

**APPLICATION FOR INJUNCTIVE RELIEF**

## COUNT VIII
## (TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION WITH RESPECT TO PROPERTY)

76. The Bank refers to and realleges each of the foregoing allegations of this Complaint as it more fully set forth herein.

77. The Bank will suffer immediate and irreparable injury, loss or damage if defendants, their agents, employees, managers, representatives and others acting in concert with them are not immediately enjoined from converting, diverting, hiding, secreting, or commingling the collateral secured by the Loan Agreements.

78. Based on Borrower's fraudulent conduct, and failure to produce the Collateral for inspection and turnover in accordance with the Bank's rights, and absent the injunctive relief sought by the Bank, the Bank reasonably believes that Defendants will continue to conceal and may yet dissipate or dispose of or otherwise make the Collateral unavailable to satisfy Defendants' indebtedness to the Bank.

79. The reasonable value of the Collateral is far less than the unpaid principal balances of the Loans, and upon information and belief, Defendants lack sufficient assets to pay the Loans in full, and therefore lack sufficient assets to satisfy a judgment.

80. In order to avoid such irreparable injury, the Bank seeks a temporary restraining order, temporary injunction and writ of sequestration.

81. In order to protect and preserve the collateral, and in order to allow the Bank to exercise its right to take possession of the Collateral and foreclose its security interest therein, the Bank seeks a temporary restraining order:

    a. Enjoining and restraining Defendants, and each of their officers, directors, shareholders, employees and representatives from:

        i. Hiding, secreting, moving, transferring or removing from the jurisdictional limits of this Court and/or from Harris County, Texas, or any other County where such items are located, any of the Collateral;

        ii. Removing, damaging, destroying, hiding, or secreting any of the Collateral.

b. Immediately identifying to counsel for the Bank the specific location of all Collateral.

c. Mandatorily enjoining and directing Defendants, and each of their officers, directors, shareholders, employees and representatives, to immediately deliver to the Bank possession of the Collateral.

82. The Bank also seeks a temporary injunction extending the temporary restraining order until a judgment is entered in this cause and further seeks a permanent injunction on terms identical to the temporary restraining order and temporary injunction.

## COUNT IX
### (WRIT OF SEQUESTRATION)

83. The Bank refers to and realleges each of the foregoing allegations of this Complaint as it more fully set forth herein.

84. Plaintiff is entitled to a writ of sequestration pursuant to the provisions of Rule 64 of the Federal Rules of Civil Procedure, and section 62.001 of the Texas Civil Practice and Remedies Code.

85. As set forth above, Borrower has defaulted under the Loan Documents.

86. Pursuant to the terms of the RLOC Security Agreement and the MLSA Loan Agreement, upon the occurrence of an event of default thereunder, the Bank would be entitled to, *inter alia,* take immediate possession of the Collateral.

87. Upon information and belief, the Collateral is situated at the premises of, and is in the possession of Borrower at its business location in Houston, Texas. Alternatively, Borrower knows and must disclose the exact whereabouts of the Collateral.

88. Despite demand, Borrower has failed and refused to return the Collateral to the Bank, as required under the RLOC Security Agreement and the MLSA Loan Agreement, have

illegally continued to maintain possession of same, and upon information and belief, may have abandoned certain of the Collateral.

89. The items subject to a writ of sequestration and seizure are more specifically described as the Collateral, and includes the Equipment. The 2020 Trencor Trencher T16-60, Serial Number T16-187, with the attached Bucket Wheel, has a fair market value of not more than $1,992,041.37; and the 2022 Vermeer Drill D330X500, Serial Number 1VR450075E1099684, has a fair market value of not more than $1,733,498.00 based upon the invoiced sale price as of December 27, 2023.   A true and accurate copy of the December 27, 2023 invoice for the Equipment is attached hereto as Exhibit 16.

90. The Bank reasonably believes that there is immediate danger that Defendants will conceal, hide, secrete or remove from the jurisdiction of this Court and/or from Harris County, during the pendency of this action, the Collateral, because Defendants have defrauded Plaintiff by providing the invalid and fraudulent Purported Lien Release Letter from Regions Bank and failed to provide the Bank with access to inspect the Collateral, as required by the RLOC Security Agreement, ¶ 3.(b)(viii) (PLEDGOR'S COVENANTS.) and MLSA Loan Agreement, ¶ 4 (Use; Maintenance; Location; Inspection.).

91. Unless a prejudgment writ of sequestration is issued, *ex parte* and without notice to Defendants, the Bank reasonably believes that the Collateral is in immediate danger of being hidden, secreted, lost or removed from Harris County and/or the State of Texas.

92. Accordingly, the Bank is entitled to a judgment of possession of the Collateral against Borrower.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Bank of America, N.A. prays that Defendants Mega World Builder Corp. and Mahir Nasif be cited to appear and answer and have judgment against the Defendants for:

a. Without notice to Defendants, the Court issue a temporary restraining order and *ex parte* writ of sequestration as requested herein;

b. That the Court set a date and time for the hearing of the Bank's Application for Temporary Injunction;

c. That the Defendants be cited to appear and answer herein;

d. That the Bank shall recover judgment of and from and against Defendants on each of its claims and for its reasonable and necessary attorneys' fees and costs of suit;

e. Reasonable attorneys' fees with additional contingent amounts in the event of appellate proceedings;

f. All taxable costs of suit; and

g. The Bank be granted all further relief to which Plaintiff may be entitled.

Dated: August 13, 2024

Respectfully submitted,
LAM, LYN & PHILIP, P.C.
6363 Woodway Drive, Suite 975
Houston, Texas 77057
Telephone (713) 981-0900
Facsimile (713) 772-7085

*/s/ Kurt L. Lyn*

Kurt L. Lyn, attorney-in-charge
State Bar No. 00786078
SDTX Bar No. 16587
klyn@llppc-law.com
Joni M. Fraser
State Bar No. 2408978
SDTX Bar No. 3052883
jfraser@llppc-law.com
**Attorneys for Plaintiff**

## VERIFICATION

STATE OF ILLINOIS

COUNTY OF COOK

BEFORE ME, the undersigned authority, personally appeared Raymond E. Ratliff, who being duly sworn deposes and says:

1. My name is Raymond E. Ratliff, and I am a Senior Vice President and SAG Portfolio Officer of Bank of America, N.A. (the *"Bank"*), the Plaintiff in the above-captioned lawsuit. I am over the age of twenty-one (21) and am competent to make this Affidavit and have personal knowledge of the facts set forth herein.

2. I have read the foregoing Verified Original Complaint, Application for Temporary Restraining Order and Temporary Injunction, and *Ex Parte* Application for Writ of Sequestration (the *"Complaint"*). The statements set forth in the Complaint are true and correct based on my personal knowledge, from public records, the records of the Bank, or information provided to the Bank by members, employees and agents of Defendants, except as to matters alleged to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

FURTHER AFFIANT SAYETH NOT.

_____
Raymond E. Ratliff

Subscribed and sworn to before me on the 12 day of August, 2024, to certify which witness my official hand and seal of office.

OFFICIAL SEAL
CLARE PATRICIA MCNELEEY
Notary Public, State of Illinois
Commission No. 984617
My Commission Expires January 03, 2028

_____
Notary Public, State of Illinois