United States District Court
Southern District of Texas
ENTERED
November 24, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BANK OF AMERICA, N.A., §
§
Plaintiff, §
VS. § CIVIL ACTION NO. 4:24-CV-3021
§
MEGA WORLD BUILDER CORP., *et al.*, §
§
Defendants. §
§

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a motion for summary judgment filed by Plaintiff Bank of America, N.A. ("Bank of America"). Bank of America's motion (Dkt. 111) is **GRANTED IN PART AND DENIED IN PART**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Bank of America has sued Defendant Mega World Builder Corp. ("Mega World") for breach of two loan agreements, foreclosure of a security interest under Article 9 of the Uniform Commercial Code ("UCC"), conversion, and unjust enrichment. (Dkt. 78 at pp. 17–20). Bank of America has also sued Mahir Nasif ("Nasif"), who is Mega World's Chief Executive Officer, for breach of related guaranty agreements. (Dkt. 78 at p. 21). The dispute stems from Bank of America's extension of millions of dollars in loans to Mega World, repayment of which was guaranteed by Nasif.

Bank of America signed three loan agreements with Mega World. The first loan was a $4.5 million revolving line of credit secured by a first-priority blanket security interest in

all of Mega World's assets ("the RLOC"). (Dkt. 78-1; Dkt. 78-2). The second loan was a $3 million equipment loan that Mega World purportedly used to purchase two pieces of heavy equipment—specifically, a trencher and a drill ("the equipment loan"). (Dkt. 78-5; Dkt. 78-6). The third loan agreement was a commercial credit card agreement ("the credit card agreement"). (Dkt. 78-9). Nasif signed personal guaranties of the RLOC and the equipment loan ("the guaranties"). (Dkt. 78-4; Dkt. 78-8). Bank of America filed UCC financing statements with the Florida Department of State perfecting its liens under the RLOC and the equipment loan. (Dkt. 78-3; Dkt. 78-7).

The RLOC, the equipment loan, and the credit card agreement all contain extensive provisions defining what constitutes a default. All three loans stipulate that Mega World has defaulted if it has provided Bank of America with, in the words of the RLOC, "false or misleading information or representations." (Dkt. 78-1 at p. 12; Dkt. 78-5 at p. 4; Dkt. 78-9 at p. 7). Moreover, all three loans contain cross-default provisions stipulating that a default under one loan constitutes a default under the other two. (Dkt. 78-1 at p. 12; Dkt. 78-5 at p. 4; Dkt. 78-9 at p. 7). In its summary judgment briefing, Bank of America contends that Mega World defaulted under all three loan agreements by repeatedly providing Bank of America with false and misleading information regarding, among other things, the existence of other liens on Bank of America's collateral. (Dkt. 111 at pp. 6–12). Bank of America further contends that Mega World defaulted under the credit card agreement—and, by operation of the cross-default provisions, the other two loan agreements as well—when it missed a credit card payment because it lacked sufficient funds to cover the remitted payment. (Dkt. 111 at pp. 14–15). Based on the numerous

alleged defaults and Mega World's failure to repay the loans or turn over the collateral, Bank of America seeks summary judgment on its claims. The Court will grant Bank of America's motion for summary judgment on its claims for breach of the RLOC, the equipment loan, and the guaranties[1] and for foreclosure of a security interest under Article 9 of the UCC.[2] (Dkt. 111 at pp. 18–21).

## II. SUMMARY JUDGMENTS

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the movant will carry the burden of proof at trial, as is the case when the movant is either the plaintiff or a defendant asserting an affirmative defense, then the movant must carry its initial burden under Rule 56 by establishing beyond peradventure

[1] Bank of America has not brought an action for breach of the credit card agreement because the credit card agreement contains an arbitration clause. (Dkt. 111 at p. 6).

[2] The Court will not grant Bank of America's motion for summary judgment on its claims for unjust enrichment and conversion. Bank of America states in its summary judgment briefing that it only brought its claim for unjust enrichment "as an alternative remedy" in case the Court "rejects [its] claims for breach of contract[.]" (Dkt. 117 at p. 8). The Court is granting Bank of America's motion for summary judgment on its claims for breach of contract, so there is no need to discuss the claim for unjust enrichment; and the Court will accordingly consider the unjust enrichment claim voluntarily withdrawn. Furthermore, the Court cannot grant summary judgment for Bank of America on its conversion claim on this record. Under Texas conversion law, Bank of America is required to prove the fair market value of the converted property at the time and place of the conversion. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex. 1997). Bank of America has omitted the damages element entirely from its discussion of its conversion claim and has pointed to no evidence in the record showing the fair market value of any property allegedly converted by Mega World or Nasif. (Dkt. 111 at pp. 21–22).

all of the essential elements of its claim or defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co*., 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue of material fact. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof,

the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). And Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## III. ANALYSIS

On this record, Bank of America is entitled to judgment as a matter of law on its claims for breach of the RLOC, the equipment loan, and the guaranties and for foreclosure of a security interest under Article 9 of the UCC.

### a. Breach of contract

On this record, Bank of America is entitled to summary judgment on its claims for breach of the RLOC, the equipment loan, and the guaranties.

*—The RLOC and the equipment loan*

In order to prevail on its claims for breach of the RLOC and the equipment loan, Bank of America must satisfy four elements: (1) a valid contract; (2) Bank of America's performance; (3) Mega World's breach; and (4) resulting damages. *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 993 (5th Cir. 2019). "To determine the meaning of contractual terms, Texas courts focus on the parties' intentions as expressed in the contract itself." *Id.* The Court begins its analysis with the contract's express language. *El Paso Field Services, L.P. v. MasTec North America, Inc.*, 389 S.W.3d 802, 805–06 (Tex. 2012). If the Court determines that the contract's language can be given a certain or definite legal

meaning or interpretation, then the contract is not ambiguous and the Court will construe it as a matter of law. *Id.* at 806.

The parties do not dispute that the first and second elements of a breach of contract claim are satisfied as to both the RLOC and the equipment loan. With regard to the breach element, the RLOC and the equipment loan both allow Bank of America to require Mega World to repay its entire debt immediately upon default. (Dkt. 78-1 at p. 12; Dkt. 78-5 at p. 4). The summary judgment evidence shows that Bank of America provided Mega World with written notice on July 29, 2024 that Bank of America was accelerating the RLOC and the equipment loan. (Dkt. 78-23). Mega World has neither repaid the loan nor turned over the pledged collateral. (Dkt. 111-3 at p. 8). Accordingly, if Mega World has defaulted on the RLOC and the equipment loan, then Mega World is in breach of the RLOC and the equipment loan.

i. The payment default

The summary judgment evidence establishes beyond peradventure at least two defaults by Mega World. The first of those defaults is Mega World's failure to make a required payment under the credit card agreement. Bank of America has presented evidence showing that, on July 18, 2024, Mega World remitted a payment under the credit card agreement that Mega World lacked sufficient funds to cover. (Dkt. 78 at p. 15). In their summary judgment response, Defendants do not contest Bank of America's evidence showing the failed payment attempt; instead, they point solely to an unsworn declaration in which Nasif avers that, "[t]o the best of [his] recollection, the Credit Card was activated

on June 19, 2024 and payment was therefore not due on July 18, 2024, when [Bank of America] claims that [Mega World] defaulted." (Dkt. 115-21 at p. 2).

Nasif's statement that a card was activated in June of 2024 does not create a triable fact issue. The summary judgment evidence shows that the credit card agreement became effective on February 16, 2024. (Dkt. 78-9 at p. 2). Moreover, and more importantly, the evidence shows that the current balance on Mega World's corporate credit card is $685,565.01—the same principal amount that Bank of America sought in its notice of acceleration on July 29, 2024—yet there is no evidence in the record showing that Mega World has ever made a credit card payment. (Dkt. 78 at pp. 15–16; Dkt. 78-23 at p. 4). The summary judgment evidence establishes beyond peradventure that Mega World has failed to make at least one required payment under the credit card agreement. By operation of the cross-default provisions, Mega World's failure to make any credit card payments constitutes a default under all three loan agreements between Mega World and Bank of America.

ii. The Regions Bank default

The second default that is established beyond peradventure by the summary judgment evidence is Mega World's submission of falsified documents to Bank of America in an attempt to convince Bank of America that a different bank, Regions Bank, did not hold a lien on the same collateral pledged by Mega World to Bank of America.

All three loan agreements stipulate that Mega World has defaulted if it has provided Bank of America with, in the words of the RLOC, "false or misleading information or representations." (Dkt. 78-1 at p. 12; Dkt. 78-5 at p. 4; Dkt. 78-9 at p. 7). Bank of America

has presented summary judgment evidence showing that Nasif sent it two fabricated letters, one dated May 2, 2024 and the other dated May 9, 2024, that purported to be lien release letters signed by Thomas Bacarella, a Vice President at Regions Bank ("the Bacarella letters"). (Dkt. 78-10; Dkt. 78-11). The Bacarella letters were attached to emails that were sent by Nasif in response to Bank of America's requests for a Disclaimer of Security Interest executed by Regions Bank. (Dkt. 78-10; Dkt. 78-11). For example, Nasif sent the May 9, 2024 letter in response to an email from Arti Patel ("Patel"), a Vice President at Bank of America, when Patel asked for a Disclaimer of Security Interest from Regions Bank:



MN

M. Nasif <megaworldbuilders@gmail.com> Wednesday, May 29, 2024 at 4:45 PM

To: Patel, Arti

release letter.pdf
244.6 KB

Download • Preview

I sent you this one before.

On Wed, May 29, 2024 at 1:56 PM Patel, Arti <arti.r.patel@bofa.com> wrote:

> We can also accept a Disclaimer of Security interest as well on our collateral. They UCC doesn't have to be terminated. I was just under the impression that he was terminating all of them.

Dkt. 78-11 at p. 2.

Here is the full text of the May 9, 2024 letter:



May 9, 2024

MEGA World Builder Corp.
12604 Haynes Rd.
Suite A
Houston, Texas 77066
Attention: Mahir Nasif, President:

Re: That one certain $2,000,000.00 revolving line if credit loan ("Loan") made by Regions Bank ("Lender") to MEGA World Builder Corp., a Florida corporation ("Borrower") pursuant to that one certain Loan Agreement date October 18, 2021 ("Loan Agreement"), which Loan is more fully described in that one certain U.S. Small Business Administration Note dated October 18, 2021 ("Note"), which Note is payable to the order of Lender in the original principal amount of $2,000,000.00 ("Note"), the payment and performance of which Note being guaranteed by Mahir Nasif ("Guarantor") pursuant to the terms of that one certain U.S. Small Business Administration Unconditional Guaranty dated October 18, 2021 ("Guaranty").

As you know from our previous discussion, I am the Regions Bank officer handling the Borrower's loan relationship. In that regard I have received Borrower's request to release the UCC-1 filing 202109293153 / 202203375572 which was filed on 5/7/2024 to be released.

Let me assure you, Lender is no longer holding the ABA on MEGA World Builder Corp., and should see the release reflect in a timely matter. The loan has been paid in full and no longer active in our system. Please allow 4 to 6 weeks for the release to reflect in the system.

I hope this clarifies this situation. We look forward to hearing from you regarding this issue.

Very truly yours,

REGIONS BANK

By: [signature]
Name: Thomas J. Bacarella
Title: Vice President

Dkt. 78-11 at p. 3.

Bank of America cites compelling evidence in the summary judgment record showing that the Bacarella letters were forgeries designed by Nasif to mislead Bank of America regarding the status of Regions Bank's liens. Bacarella himself has testified that he neither wrote the Bacarella letters nor authorized the use of his signature on the Bacarella letters. (Dkt. 22-1 at pp. 2–3; Dkt. 78-13). Moreover, Bacarella has further testified that "Regions Bank has loans outstanding to [Mega World] that have not been repaid" and that "Regions Bank has not released its UCC liens against [Mega World]"—in other words, that the representations contained within the Bacarella letters about the status of Regions Bank's liens are false. (Dkt. 22-1 at p. 3).

In their responsive brief, Defendants do not contest Bank of America's evidence regarding the Bacarella letters but instead contend that Bank of America "could not have relied on any document from Regions Bank . . . in making its financing decision because the loans were finalized before [Bank of America] received any such documents." (Dkt. 115 at p. 5). Defendants' contention, whether or not it is factually accurate, is immaterial. The loan agreements do not require Bank of America to show that it relied on any false or misleading information or representations provided by Mega World. Rather, the loan agreements stipulate that Mega World defaults if it simply provides Bank of America with false or misleading information or representations. (Dkt. 78-1 at p. 12; Dkt. 78-5 at p. 4; Dkt. 78-9 at p. 7).

The summary judgment evidence establishes beyond peradventure that Mega World submitted falsified documents to Bank of America in an attempt to convince Bank of America that a different bank, Regions Bank, did not hold a lien on the same collateral

pledged by Mega World to Bank of America. Mega World's provision of falsified documents to Bank of America constitutes a default under all three loan agreements.

iii. Damages

The damages element of Bank of America's claims for breach of the RLOC and the equipment loan is satisfied by Bank of America's evidence showing the amounts due under the loans. One of Bank of America's Senior Vice Presidents has testified by unsworn declaration that Mega World owes $7,050,293.72 on the two loans, not including unpaid interest and fees. (Dkt. 111-3 at p. 8). Defendants do not discuss Bank of America's damages evidence in their response and do not cite any evidence of their own regarding the damages element of Bank of America's breach of contract claims.

*—The guaranties*

Bank of America must also satisfy four elements in order to prevail on its claims for breach of the guaranties. "A plaintiff seeking to enforce a guaranty must prove: (1) the existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor." *Mae v. U.S. Property Solutions, LLC*, No. 4:08-CV-3588, 2011 WL 66161, at *5 (S.D. Tex. Jan. 10, 2011) (quotation marks omitted). "Courts enforce guaranties according to their terms when those terms are clear and unambiguous." *Id.*

Bank of America's evidence sufficiently establishes all of the necessary elements. The guaranties state that Nasif "unconditionally guarantees" payment of Mega World's debts to Bank of America under the RLOC and the equipment loan. (Dkt. 78-4 at p. 2; Dkt.

78-8 at p. 2). As discussed above, Mega World has defaulted on the loans, triggering Nasif's obligations under the guaranties. Nasif has not paid Bank of America.

The summary judgment evidence establishes beyond peradventure all of the elements of Bank of America's claims for breach of the RLOC, the equipment loan, and the guaranties. Accordingly, Bank of America is entitled to summary judgment on its claims for breach of contract.

**b. Foreclosure of a security interest**

On this record, Bank of America is also entitled to summary judgment on its claim for foreclosure of a security interest under Article 9 of the UCC. "Generally, a security interest is created [under Article 9 of the UCC] when three requirements are met: (1) value has been given; (2) the debtor must have rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has authenticated a security agreement that provides a description of the collateral." *Transamerica Annuity Service Corp. v. Symetra Life Insurance Co.*, No. 4:16-CV-1426, 2018 WL 4620712, at *9 (S.D. Tex. Sept. 19, 2018); *see also In re ProvideRx of Grapevine, LLC*, 507 B.R. 132, 159 (Bankr. N.D. Tex. 2014). Filing a UCC financing statement can perfect a security interest. *Transamerica Annuity*, 2018 WL 4620712 at *10. A secured party is entitled to foreclose on its security interest in the event of default. *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 769 (S.D. Tex. Sept. 30, 2013).

Bank of America's evidence sufficiently establishes that the RLOC and equipment loan transactions created security interests under Article 9 of the UCC. The parties do not dispute that Bank of America loaned Mega World $4.5 million under the RLOC and $3

million under the equipment loan. As part of those loan transactions, Mega World signed security agreements that described collateral owned by Mega World. (Dkt. 78-2; Dkt. 78-6). Bank of America then filed UCC financing statements covering that same collateral. (Dkt. 78-3; Dkt. 78-7). Accordingly, Bank of America has perfected security interests under Article 9 of the UCC in the assets used by Mega World to collateralize the RLOC and the equipment loan.

As the Court outlined in its discussion of Bank of America's breach of contract claims, Bank of America's evidence also sufficiently establishes that Mega World has defaulted on the RLOC and the equipment loan. Accordingly, Bank of America is entitled to foreclose on its Article 9 security interests in the assets used by Mega World to collateralize the RLOC and the equipment loan.

## IV. CONCLUSION

Bank of America's motion for summary judgment (Dkt. 111) is **GRANTED** as to its claims for breach of contract and foreclosure of a security interest under Article 9 of the UCC and is otherwise **DENIED**.

SIGNED at Houston, Texas on November 24, 2025.

George C. Hanks Jr.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE